STATE OF CONNECTICUT *v.* HOA VAN NGUYEN
(SC 16093)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 27—officially released July 18, 2000

*James E. Swaine*, for the appellant (defendant).

*Ellen A. Jawitz*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The principal issue in this certified appeal involves the proper scope of the trial court's inquiry

when faced with an allegation that a sequestration order granted pursuant to Practice Book § 42-36[1] has been violated. In specific, we must determine whether, in the absence of a request from counsel, the trial court must conduct a formal evidentiary hearing prior to ruling on the merits of an alleged sequestration violation. This inquiry requires that we also determine, as a preliminary matter, the limitations of such an order, specifically whether a sequestration order granted pursuant to § 42-36 operates to prohibit counsel from discussing, outside of the courtroom, the testimony of a prior witness in the presence of a prospective witness. We conclude that, in the absence of a contrary indication from the trial court, such conduct falls within the scope of a sequestration order. We conclude further that, although the trial court must conduct a preliminary inquiry of counsel when presented with a facially credible allegation that a sequestration order has been violated, whether to conduct an evidentiary hearing sua sponte is a matter within the trial court's discretion. Finally, consistent with the Appellate Court's determination of this issue; see *State* v. *Nguyen*, 52 Conn. App. 85, 88–89, 726 A.2d 119 (1999); we conclude that, under the circumstances of this case, the trial court's failure to conduct an evidentiary hearing was not an abuse of discretion. Accordingly, we affirm the judgment of the Appellate Court.

The defendant, Hoa Van Nguyen, was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[2] and risk of injury to a child

---

[1] Practice Book § 42-36 provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which such witness is not testifying."

[2] General Statutes § 53a-70 provides in relevant part: "Sexual assault in the first degree: Class B felony: Nonsuspendable sentences. (a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

in violation of General Statutes (Rev. to 1993) § 53-21.[3] Following a jury trial, the defendant was convicted on both counts, and the trial court imposed a total effective sentence of fifteen years imprisonment, execution suspended after twelve years, with five years probation.

The defendant appealed from the judgment of the trial court to the Appellate Court. The Appellate Court opinion sets forth the following facts that are relevant to this appeal. "The defendant, his wife and the victim's parents jointly purchased and lived together in a single-family home in West Hartford. In 1994, the five year old victim, Q, and her brother went to play in the basement of the house. The defendant was already in the basement and asked the victim's brother to go back upstairs and to lock the basement door behind him.

"The defendant then removed Q's shorts and underpants and unfastened his trousers. He forced Q to stimulate his penis manually and then inserted his penis into her vagina. Afterwards, the defendant told Q that he would buy her a toy if she kept secret what had happened. Q went upstairs and told her mother what had occurred." *State* v. *Nguyen*, supra, 52 Conn. App. 87.

At trial, "[t]he trial court granted the state's motion for a sequestration order pursuant to Practice Book § 876, now § 42-36. During the defendant's case-in-chief, the defendant's wife testified that Q's parents were physically abusive when disciplining Q and her brother, that they had fabricated the rape charge to gain control of the jointly owned house and that Q had cooperated with her parents out of fear of physical punishment.

---

[3] General Statutes (Rev. to 1993) § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

Immediately following that testimony, the prosecutor overheard part of a closed door discussion in a room outside of the courtroom between the defendant's attorney, the defendant's wife and George Thibodeau . . . a friend of the defendant [who was to be the next defense witness]." Id., 87–88.

The prosecutor immediately brought this incident to the attention of the trial court, stating specifically: "I heard [defense counsel] talking to the last witness who is [the defendant's wife], and in doing so I heard him saying to her 'Well, why didn't you say this and you should have said this,' something to that effect about her testimony that she had just completed and testified to. I heard her making [a] response to him. I'm not sure what that response was, but I could hear a female voice obviously responding to what inquiries were posed [to] her. Thereafter, I hear counsel indicating that, you know, 'She had said this' and then directing his attention I would infer to Mr. Thibodeau, 'Well, can you say this and can you say this' and discussing what obviously would be, you know, what his impending testimony was going to be."

Defense counsel responded to the prosecutor's representations as follows: "I did go into the witness room. There was both the . . . defendant's wife and . . . Thibodeau. There may have been some reference to her while Mr. Thibodeau was there, some comment by me about her testimony. As to what it was I can't remember exactly but my questioning about something that she said, but other than that, I have no recollection of talking to Mr. Thibodeau about what he would say or not say. . . . I may have asked [the defendant's wife] a question about what she said when she testified, yes. She was upset, and she was inquiring about [whether she had said] the right thing, that sort of thing, but, you know, I responded to that mainly because my thinking was that, well, this witness has testified. You

know, it's not really an issue what she says in front of anybody, not really thinking about Thibodeau, who was in the corner basically reading the paper when I walked in."

Thereafter, the court instructed the prosecutor to restate the basis of his allegation. The prosecutor recounted that "there was a reference that 'she said this' and then a direction, which I believe would be to Mr. Thibodeau about 'Well, can you say this' and 'You can say this' as to the nature of what he would ultimately testify to . . . which I perceive obviously is discussing what she said with him in [Thibodeau's] presence and then obviously determining to proffer his evidence." In response, defense counsel denied the allegation, emphasizing that, "[t]here was no instruction by me to anybody as to what to say. Now, there may be a discussion about some other matter but certainly no discussion about what [Thibodeau's] testimony should be." At that point, the prosecutor clarified that he was not suggesting that defense counsel *told* Thibodeau what to say on the stand, but that he had "heard [defense counsel] refer to matters that the witness had just testified to. 'She said this, [s]he said this' and then directing his attention obviously to Mr. Thibodeau, who is standing right there 'Well, can you say this,' and 'you could say this' and then getting into the sum and substance of his conversation. That's what I heard." In response, defense counsel effectively retracted his original statement that he had discussed specific elements of the prior witness' testimony in Thibodeau's presence, stating that, "[t]here was a question or two about 'did I say the right thing, did I not say the right thing,' but I want to be clear about one thing, and that is that the substance of [the defendant's wife's] testimony was not gone into in front of Mr. Thibodeau." On the basis of these statements, the court concluded that the sequestration order, the purpose of which was to protect the

integrity of the witnesses, had been violated. Because of that breach, the trial court barred Thibodeau's testimony.

The following day, the defendant moved that the trial court reconsider its order and permit Thibodeau's testimony. Although defense counsel acknowledged having had a conversation with the defendant's wife, he attempted to clarify the perceived inconsistency in his previous statements by emphasizing that "the content of her testimony was not discussed in front of Mr. Thibodeau." At the same time, defense counsel acknowledged having "a conversation with Mr. Thibodeau about his testimony . . . . He had some questions about his testimony totally unrelated to anything regarding what the defendant's wife had to say because she wasn't describing the contents of her testimony. I was entitled to talk to him even though she was in the room about his testimony. He was my witness. She had already concluded her testimony."

The trial court instructed the prosecutor to recount again what he had overheard. The prosecutor's recollection of events mirrored his earlier representations. He responded: "Again I heard counsel speaking to the female witness who again I say is the witness who testified, the defendant's wife. He had communication with her about what she testified in the sense of she said something. He said, 'Well, why didn't you say this,' and she said something, and 'You could have said this,' and then there was conversation in the room that said, 'Well, she said this' and asking Mr. Thibodeau certain questions about what he could say and what he would say. . . . There was a statement made. I don't know if it was directed particularly to Mr. Thibodeau, but the statement was 'Well, she said this,' so I don't know who—I can't say who it was made to, but obviously that statement was made in the presence of Mr. Thibodeau, and then there was conversation with Mr. Thibo-

deau about his upcoming testimony." Defense counsel argued that the prosecutor was taking the conversation out of context, and reiterated his claim that "[t]he only thing that was discussed was the way she talked, the way she testified, her feelings about it, whether she should have been stronger, more emotional, did she cry too much, but the content of what she said was not discussed in front of Mr. Thibodeau . . . ."

The trial court then inquired into the nature of Thibodeau's proposed testimony, which, according to defense counsel, was intended to corroborate matters previously testified to by the defendant's wife, including Q's abusive relationship with her parents, and the relationship between Q's parents and the defendant's family. Thereafter, the trial court denied the defendant's motion. The trial court reasoned as follows: "I find nothing in the argument today that would cause me to change my prior ruling. I can assure you that I don't make this ruling lightly, and had [a physician who testified as an expert witness for the defense], for example, been in the room with you . . . and he were to be the witness following the defendant's wife, I would be just as dismayed that he was in that room while you were there with your last witness, but I would see no relationship between or little relationship between his proposed testimony and that of the defendant's wife. It weighed heavily on my decision as to who the parties were that were in that room. . . . You have both spoken as officers of the court and need not be placed under oath . . . as far as I'm concerned. . . . I believe because of the nature of both witnesses' testimony that the activity here yesterday afternoon in the anteroom violates the [sequestration] order."

On appeal to the Appellate Court, the defendant claimed, inter alia, that, following the prosecutor's allegations, the trial court improperly had failed to conduct sua sponte an evidentiary hearing before concluding

that the sequestration order had been violated and barring Thibodeau from testifying.[4] The Appellate Court rejected the defendant's claim, and affirmed the judgment of the trial court. See *State* v. *Nguyen,* supra, 52 Conn. App. 93, 97. In specific, the Appellate Court concluded that, in addition to prohibiting a prospective witness from remaining in the courtroom prior to testifying, a sequestration order issued pursuant to § 42-31 prohibits counsel from discussing a prior witness' testimony in the presence of a prospective witness outside of the courtroom. Id., 91. The Appellate Court also concluded that, in joining the state's motion for a sequestration order, and in arguing for a broad construction of the order as applied to another witness, defense counsel indicated his understanding as to the broad scope of the sequestration order. Id. In addition, relying on this court's decision in *State* v. *Brown,* 235 Conn. 502, 526, 668 A.2d 1288 (1995), the Appellate Court concluded that a trial court's decision to conduct a formal evidentiary hearing when confronted with an alleged sequestration violation is a matter of discretion. See *State* v. *Nguyen,* supra, 88–89. Finally, the Appellate Court concluded that, in light of the fact that defense counsel effectively had acknowledged the essential facts that gave rise to the prosecutor's allegations, the trial court, in reaching its conclusion that the sequestration order had been violated, had not abused its discretion in relying solely on those representations in the absence of a request from counsel to conduct an evidentiary hearing. Id., 89.

We granted the defendant's petition for certification to appeal, limited to the following issues: "1. Did the

---

[1] The defendant also claimed that the trial court improperly had denied his motion for an independent medical examination of Q, and failed to instruct the jury as requested on the issue of the credibility of a child witness. See *State* v. *Nguyen,* supra, 52 Conn. App. 86. The Appellate Court rejected these claims and the defendant did not seek certification to appeal these issues.

Appellate Court properly conclude that no evidentiary hearing was necessary regarding whether the defendant had violated the sequestration order? 2. Did the Appellate Court properly conclude that the sequestration order had been violated? [and] 3. If the answer to either question one or question two is no, was the error of the trial court harmless."[5] *State* v. *Nguyen*, 248 Conn. 913, 734 A.2d 565 (1999). This appeal followed.

We conclude that the Appellate Court properly determined that a sequestration order granted pursuant to § 42-36 prohibits counsel from discussing a prior witness' testimony outside of the courtroom in the presence of a prospective witness. We further conclude that the Appellate Court properly determined that the decision to conduct sua sponte an evidentiary hearing is a matter of discretion for the trial court, and that, under the circumstances of this case, the trial court's failure to conduct such a hearing was not an abuse of discretion. Finally, we conclude that the Appellate Court properly affirmed the trial court's determination that the sequestration order had been violated. Accordingly, we affirm the judgment of the Appellate Court.

I

The first certified issue in this appeal is whether the Appellate Court properly concluded that the trial court was not required sua sponte to conduct an evidentiary hearing before deciding whether the sequestration order had been violated, and whether to bar Thibodeau from testifying.[6] As stated previously, that inquiry

[5] In light of our conclusions with respect to the first two certified issues, we need not address the third certified issue.

[6] On appeal to the Appellate Court, the defendant had argued that, even if the trial court properly had found a violation of its order, the sanction imposed by the court, that is, an order barring Thibodeau from testifying, violated his constitutional right to present a defense. *State* v. *Nguyen*, supra, 52 Conn. App. 91–92. Alternatively, the defendant had argued that, if the exclusion of Thibodeau's testimony was not of constitutional magnitude, the trial court nonetheless abused its discretion. The Appellate Court disagreed with both of those assertions. Id., 92.

involves a determination of the scope of a sequestration order issued pursuant to § 42-31, that is, whether, in addition to barring a prospective witness from the courtroom, a sequestration order prohibits counsel from discussing a prior witness' testimony in the presence of a prospective witness outside of the courtroom. The Appellate Court affirmed the trial court's determination that such conduct fell within the scope of the sequestration order. We conclude that the Appellate Court's determination was proper.

## A

"The right to have witnesses sequestered is an important right that facilitates the truth-seeking and fact-finding functions of a trial." *State* v. *Robinson*, 230 Conn. 591, 598, 646 A.2d 118 (1994); see also *State* v. *Paolella*, 211 Conn. 672, 681, 561 A.2d 111 (1989); *State* v. *Soltes*, 20 Conn. App. 342, 346, 566 A.2d 1374 (1989), appeal dismissed, 215 Conn. 614, 577 A.2d 717 (1990). "Sequestration serves a broad purpose. It is a procedural device that serves to prevent witnesses from tailoring their testimony to that of earlier witnesses; it aids in detecting testimony that is less than candid and assures that witnesses testify on the basis of their own knowledge. *Geders* v. *United States*, [425 U.S. 80, 87, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976)] . . . ." (Citations omitted.) *State* v. *Robinson*, supra, 600; see also *State* v. *Falby*, 187 Conn. 6, 26–27, 444 A.2d 213 (1982) (" '[t]he obvious purpose of sequestering a witness while another is giving his testimony is to prevent the one

The defendant did not seek certification to appeal these issues. Nonetheless, the sanction imposed was integral to the trial court's analysis and ultimate decision, and to the Appellate Court's assessment of whether a sua sponte hearing was required. Therefore, our review of the propriety of the trial court's inquiry takes into account the significance of its ultimate decision to bar Thibodeau's testimony. See *State* v. *Wooten*, 227 Conn. 677, 685–86, 631 A.2d 271 (1998) (" '[t]he exclusion of evidence from the jury is . . . a drastic sanction' ").

sequestered from shaping his testimony to corroborate falsely the testimony of the other' "). "In essence, it helps to ensure that the trial is fair. *State* v. *Paolella,* [supra, 680–81]; *State* v. *Stovall,* [199 Conn. 62, 69, 505 A.2d 708 (1986)]." *State* v. *Robinson,* supra, 600. A trial court must take full account of the significant objectives advanced by sequestration in discerning the proper scope of a sequestration order.

As stated previously, the defendant joined in the motion submitted by the state to sequester all witnesses that would be called to testify for either party. The trial court granted that motion without expanding upon the scope of the request. The following additional facts are pertinent to our resolution of this issue.

During much of the trial, Elizabeth Foran, Q's guardian ad litem, had been present in the courtroom. Although neither party intended to call Foran as a witness, the trial court admonished Foran that, pursuant to the sequestration order, if she were to remain in the courtroom, she could not discuss any witness' testimony with Q or with any other witness. At that point, defense counsel raised a specific concern that Foran, who was in the courtroom during the testimony of Q's mother, not be permitted to discuss the case with the mother. Foran assured the court that she was not discussing the case with any of the family members. The trial court then instructed Foran that she was also not to discuss the case with any future witness.

The defendant claims that the court's sequestration order merely barred prospective witnesses from remaining in the courtroom prior to giving their testimony and, therefore, did not preclude the exchange that took place between defense counsel, the defendant's wife, and Thibodeau. The state contends, on the other hand, that because the purpose of a sequestration order is to protect the integrity of the witnesses' testi-

mony, it prohibits a party from discussing the testimony of a prior witness in the presence of a witness yet to be called.

We disagree with the defendant that a sequestration order entered pursuant to § 42-36 does no more than prohibit a prospective witness from remaining in the courtroom prior to taking the stand. As the Appellate Court correctly noted, "[t]he primary purpose of a sequestration order is to ensure that the defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others. . . . *State* v. *Sherman*, 38 Conn. App. 371, 413–14, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). Although the language of Practice Book § 876 [now § 42-36] may seem merely to bar a sequestered witness from being in the courtroom when he is not testifying . . . we do not follow so rigid an interpretation. Indeed, such an interpretation would vitiate any sequestration order by exalting form above substance." (Citations omitted; internal quotation marks omitted.) *State* v. *Nguyen*, supra, 52 Conn. App. 90–91.

We previously have held that the primary objective of a sequestration order is undermined, not only when a prospective witness hears the testimony of a prior witness firsthand, but also through the disingenuous strategy of effectively transmitting a prior witness' testimony to a prospective witness via a third party. See, e.g., *State* v. *Cavell*, 235 Conn. 711, 718, 670 A.2d 261 (1996) (recognizing that violation of sequestration order arose when expert witness reviewed transcript of prior witness' testimony on evening before taking stand); *State* v. *Falby*, supra, 187 Conn. 27–28 (prosecutor violated sequestration order by delivering transcript of defense expert's testimony to future witness); *State* v. *Sherman*, supra, 38 Conn. App. 414 (sequestration order violated when expert witness reviewed transcript of prior witness' testimony). Thus, the fact that Thibodeau

learned of the prior testimony as a result of defense counsel's discussion with the defendant's wife, as opposed to his being present in the courtroom during her testimony, makes it no less of a violation of the sequestration order.

Moreover, in the present case, the defendant not only joined the state's motion for a sequestration order, but asserted no objection when he was advised of the scope of the order by the trial court's questioning of Foran. To the contrary, "when the issue of Foran's presence in the courtroom arose, [defense counsel] urged a broad construction of the sequestration order and indicated his understanding that the order was not limited to barring prospective witnesses from the courtroom." *State* v. *Nguyen*, supra, 52 Conn. App. 91. The defendant's position at the time of trial, therefore, severely undercuts his position on appeal that the sequestration order had no effect beyond the confines of the courtroom. Under these circumstances, the Appellate Court correctly concluded that the trial court properly had applied the sequestration order to the communication among defense counsel, the defendant's wife and Thibodeau.

### B

We must next determine whether the Appellate Court properly concluded that the trial court had not abused its discretion by failing to conduct sua sponte an evidentiary hearing in response to the prosecutor's allegation that the sequestration order had been violated. Both parties agree that, when a trial court is faced with an alleged sequestration violation, "[a]n inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 230 Conn. 600; see also *State* v. *Nguyen*, supra, 52 Conn. App. 88; *State* v. *Sherman*,

supra, 38 Conn. App. 414. The question before us, however, is whether, pursuant to that inquiry, the trial court in this case properly relied upon the representations of counsel in determining that the sequestration order had been violated, and consequently barring Thibodeau from testifying, without conducting, sua sponte, an evidentiary hearing into the facts that gave rise to the prosecutor's allegations.

We first articulate the standard applicable to our review of the defendant's claim. We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court. See, e.g., *State* v. *Wolff*, 237 Conn. 633, 664, 678 A.2d 1369 (1996) (in absence of request from counsel, " '[t]he decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion' "); *State* v. *Lopez*, 235 Conn. 487, 494–95, 668 A.2d 360 (1995) (trial court has discretion to determine whether to hold evidentiary hearing before correcting transcript); *Matza* v. *Matza*, 226 Conn. 166, 180–81, 627 A.2d 414 (1993) (evidentiary hearing not necessarily required before trial court rules on attorney's motion to withdraw); *State* v. *Haye*, 214 Conn. 476, 482–83, 572 A.2d 974 (1990) (in absence of request for formal evidentiary hearing, representations of counsel may suffice to support good cause finding for continuance of probable cause hearing); see also *State* v. *Correa*, 57 Conn. App. 98, 103, 748 A.2d 307 (2000) (trial court's denial of evidentiary hearing on defendant's motion to suppress reviewed for abuse of discretion); *State* v. *Gundel*, 56 Conn. App. 805, 814, 746 A.2d 204 (2000) (reviewing trial court's failure to conduct evidentiary hearing to determine whether guilty plea was knowing and voluntary under abuse of discretion standard); *State* v. *Barrett*, 43 Conn. App. 667, 672–74, 685 A.2d

677 (1996), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997) (trial court did not abuse discretion in denying defendant's motion for evidentiary hearing on admissibility of victim's prior allegations of sexual assault); *State* v. *Jennings*, 5 Conn. App. 500, 505, 500 A.2d 571 (1985) (inquiry on appeal limited to determining whether trial court abused discretion in refusing to grant full evidentiary hearing on defendant's motion for mistrial). On appeal, "every reasonable presumption in favor of the trial court's discretionary ruling will be made. *State* v. *McKnight*, 191 Conn. 564, 577, 469 A.2d 397 (1983) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Haye*, supra, 483. In determining whether the Appellate Court properly concluded that the trial court in this case had not abused its discretion in failing to conduct, sua sponte, an evidentiary hearing, we find instructive those cases dealing with the proper scope of the trial court's investigation of alleged misconduct in similar contexts.

"In the past, we have recognized that the trial court has broad discretion to determine the form and scope of the proper response to allegations of . . . misconduct. See *State* v. *Ross*, [230 Conn. 183, 228, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995)]; *State* v. *Rodriguez*, [210 Conn. 315, 326, 554 A.2d 1080 (1989)]; *State* v. *Asherman*, [193 Conn. 695, 735, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)]." *State* v. *Brown*, supra, 235 Conn. 523–24. In *Brown*, for example, "we exercised our supervisory authority over the administration of justice to hold that . . . a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. . . . We reiterated that the trial court has broad discretion to determine the form and scope of the proper response

to allegations of jury misconduct . . . . Our role as an appellate court is limited . . . to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 331, 715 A.2d 1 (1998). These same principles apply to our review of a claim that the trial court improperly failed to conduct, sua sponte, an evidentiary hearing when confronted with an alleged sequestration violation.

The defendant claims that the trial court in this case was required, sua sponte, to conduct an evidentiary hearing because the actual communications that might establish a sequestration violation could not be ascertained from a preliminary inquiry of counsel. In support of his claim, the defendant asserts that the prosecutor did not establish the substance of the exchange that took place among defense counsel and the two witnesses. He also emphasizes that defense counsel denied the prosecutor's allegations, both pursuant to the initial inquiry, and in moving that the trial court reverse its order barring Thibodeau's testimony. In essence, therefore, the defendant's argument distills to a single assertion, namely, that the trial court improperly relied upon the representations of counsel in determining that the sequestration order had been violated. Accordingly, the defendant maintains that the Appellate Court improperly concluded that no evidentiary hearing was warranted.

The state counters that the trial court did not abuse its discretion in declining to conduct, sua sponte, an evidentiary hearing because defense counsel, in response to the trial court's preliminary inquiry, acknowledged the essential facts that gave rise to the prosecutor's allegations. Under these circumstances, the state maintains, the trial court was justified in concluding that the sequestration order had been violated

based solely upon the representations of counsel. Moreover, the state emphasizes that the defendant's failure to request an evidentiary hearing militates against a finding that the failure to conduct such a hearing was an abuse of discretion. We agree with the state.

In our review of the trial court's decision in the present case, we are mindful that "[t]he overarching principle behind the scope of the preliminary inquiry into allegations of [sequestration violations] is that the breadth of questioning should be sufficient to permit the entire picture to be explored . . . . *United States* v. *Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983), cert. denied, 466 U.S. 971, 104 S. Ct. 2344, 80 L. Ed. 2d 818 (1984)." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 245 Conn. 336–37. "[A]ny assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with [a particular claim] will necessarily be fact specific. . . . The circumstances in each case will necessarily vary and each situation is sui generis. *United States* v. *Barnes*, 604 F.2d 121, 144 (2d Cir. 1979), cert. denied, 446 U.S. 907, 100 S. Ct. 1833, 64 L. Ed. 2d 260 (1980)." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, supra, 331–32; see also *State* v. *Brown*, supra, 235 Conn. 531. In some instances, "a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record"; *State* v. *Brown*, supra, 528; *State* v. *Santiago*, supra, 332; that a violation has occurred. Such was the case here.

In the present case, the trial court conducted a preliminary inquiry of counsel to determine whether the sequestration order had been violated. Pursuant to that inquiry, defense counsel recalled that he and the defendant's wife had discussed elements of her testimony in Thibodeau's presence, stating specifically that "[he] may have asked [the defendant's wife] a question about what she said when she testified . . . [while] Thibo-

deau . . . was in the corner [of the same room] . . . ."
Additionally, defense counsel acknowledged that,
immediately following that discussion, he and Thibo-
deau had discussed Thibodeau's upcoming testimony.
Moreover, prior to denying the defendant's motion to
reconsider its order barring Thibodeau's testimony, the
trial court inquired into the nature of the testimony that
Thibodeau was to provide. Defense counsel acknowl-
edged his intent to call Thibodeau for the purpose of
establishing facts previously testified to by the defen-
dant's wife.[7] The consistency between the two wit-
nesses' testimony "weighed heavily" on the trial court's
ultimate decision to deny the defendant's motion.

In light of the representations made by defense coun-
sel, we cannot say that the trial court abused its discre-
tion in not conducting, sua sponte, an evidentiary
hearing for the purpose of inquiring further into the
facts and circumstances that gave rise to the prosecu-
tor's allegations. The trial court was entitled to credit
the truth of defense counsel's assertions; see *State* v.
*Webb*, 238 Conn. 389, 420, 680 A.2d 147 (1996) (" '[a]ttor-
neys are officers of the court, and when they address
the judge solemnly upon a matter before the court,
their declarations are virtually made under oath' "); and,
therefore, to rely on them in support of its finding that

---

[7] Before the trial court, defense counsel emphasized repeatedly that his
discussion with the defendant's wife was "inadvertent," adding that his sole
intention was to placate and comfort the witness. Defense counsel's intent
in this regard, however, is not controlling for the purpose of determining
whether the trial court abused its discretion in finding that a sequestration
violation had occurred. A sequestration order, and the remedy for its viola-
tion, is designed to protect the integrity of witness testimony, not to punish
the attorney's conduct. See *State* v. *Falby*, supra, 187 Conn. 27 (primary
concern for fashioning remedy for sequestration violation is " 'fairness of
the trial, not the culpability of the [offender]' "); see also *State* v. *Cavell*,
supra, 235 Conn. 720 (same). Thus, that defense counsel might not have
deliberately disclosed the witness' testimony to Thibodeau, does not in and
of itself undermine the propriety of the trial court's conclusion that the
discussion nonetheless violated the sequestration order.

the sequestration order had been violated. See *State* v. *Falby*, supra, 187 Conn. 27 (record adequate for determination that sequestration order had been violated wherein prosecutor acknowledged delivering transcript of defense expert's testimony to witness). Accordingly, to require an evidentiary showing "to support representations of counsel concerning such matters would impugn the veracity of counsel and impose a staggering burden of time and effort on our already overburdened court system." *State* v. *Haye*, supra, 214 Conn. 483. Indeed, given defense counsel's explanation of events, it is highly doubtful that an evidentiary hearing on the factual underpinnings of the prosecutor's allegations would have been of any value whatsoever.

The defendant makes much of the fact that, in moving the trial court to reconsider its order barring Thibodeau's testimony, defense counsel had clarified that his discussion with the defendant's wife pertained solely to the "manner," rather than the "substance," of her testimony. We do not find this distinction to be significant. First, "it is within the discretion of the trial court to make credibility assessments and determine whether the allegations are facially credible." *State* v. *Santiago*, supra, 245 Conn. 337; see also *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 487, 678 A.2d 469 (1996) (trial court has " 'unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us' "); *State* v. *Brown*, supra, 235 Conn. 527–28 ("the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of [and defenses to] . . . misconduct" [citations omitted]). Indeed, defense counsel's subsequent retreat from his original position that the discussion

in the anteroom pertained to specific elements of the testimony given by the defendant's wife reasonably could have persuaded the trial court to discredit his explanation, particularly when compared with the prosecutor's consistent version of events.

Second, as the Appellate Court correctly noted, defense counsel's ultimate characterization of events was not necessarily inconsistent with the prosecutor's assertions. See *State* v. *Nguyen*, supra, 52 Conn. App. 89. Rather, defense counsel's own representations corroborated that a conversation in fact had taken place between himself and the defendant's wife while Thibodeau was present, and that the exchange had related, in some respect, to the testimony previously given by the defendant's wife. In light of this corroboration, the prosecutor's allegations stood effectively uncontested. Therefore, defense counsel's representations provided adequate factual support for the trial court's determination that the discussion at issue undermined the purpose of the sequestration order. See, e.g., *Matza* v. *Matza*, supra, 226 Conn. 181 (counsel's uncontested affidavit sufficed to establish justification for granting attorney's motion to withdraw); *State* v. *Haye*, supra, 214 Conn. 483 (trial court properly relied upon counsel's uncontested assertions in finding good cause to extend probable cause hearing); *State* v. *Aillon*, 202 Conn. 385, 391, 521 A.2d 555 (1987) (factual support of counsel's representations required to establish unavailability of expert witness when state contests unavailability); *State* v. *Sherman*, 38 Conn. App. 371, 414, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995) (finding sequestration violation based on counsel's representation that expert had been furnished with transcript of prior witness' testimony). Under these circumstances, it cannot be said that the trial court abused its discretion in reaching that very conclusion.

Finally, we note that the defendant had ample time to request an evidentiary hearing, but nevertheless declined to do so. This dereliction further militates against a conclusion that the trial court had abused its discretion in not conducting such a hearing. See, e.g., *State* v. *Haye*, supra, 214 Conn. 482 (trial court not required to investigate state's representations of good cause for continuance where defendant did not request evidentiary hearing); *State* v. *Boucino*, 199 Conn. 207, 215, 506 A.2d 125 (1986) (trial court has no duty to conduct sua sponte evidentiary hearing prior to excluding defendant's alibi witness as remedy for late witness disclosure); *State* v. *Bethea*, 167 Conn. 80, 87–88, 355 A.2d 6 (1974) (trial court has no duty to inquire sua sponte into factual basis for defendant's request for continuance). The defendant was free to request an evidentiary hearing had he been persuaded that the trial court's less extensive inquiry had been insufficient.

In *State* v. *Brown*, supra, 235 Conn. 528, we acknowledged that there may well be cases wherein the trial court's determination as to an allegation of misconduct will rightfully be reached "solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record . . . ." This is such a case. The trial court found, based upon defense counsel's own representations, that a discussion regarding the testimony of the defendant's wife had taken place in Thibodeau's presence, and that the substance of Thibodeau's proposed testimony was to mirror that of the defendant's wife. On the basis of those findings, we cannot conclude that the trial court's failure to conduct, sua sponte, an evidentiary hearing prior to determining that the sequestration order had been violated, and consequently, barring Thibodeau's testimony, was an abuse of discretion. Thus, the Appellate Court's conclusion was proper.

## II

The only question remaining is whether the Appellate Court properly concluded that the trial court had properly determined that the sequestration order had been violated. On the basis of the scope of the sequestration order, and counsels' representations to the trial court regarding the exchange that had transpired in the anteroom, we conclude that the Appellate Court properly affirmed the decision of the trial court that the sequestration order had been violated.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.